Nellie J. Leland *vs*. Order of United Commercial
Travelers of America.

Same *vs*. Same.

Hampden.   September 23, 1919. — October 9, 1919.

Present Rugg, C. J., Braley, De Courcy, Crosby, & Carroll, JJ.

*Practice, Civil,* Report by judge.   *Rules of Court.   Insurance,* Accident.   *Proximate Cause.*

Rule 55 of the Superior Court (1915), providing that "Where a case is reserved for report, the counsel for the plaintiff shall present a draft report within twenty days thereafter, or within such further time as the court may by special order allow," does not, and was not intended to, deprive a trial judge of the power given him by R. L. c. 173, § 105, as amended by St. 1917, c. 345, to make a report in the exercise of his sound discretion in order to forward the ends of justice, and, where there has been a failure to comply with the rule, the judge is not precluded from making a report if in the exercise of wise discretion it ought to be made.

In an action on an accident insurance certificate, providing for indemnification "against the results of bodily injury . . . effected through external, violent and accidental means, herein termed the accident, which shall be occasioned by the said accident alone and independent of all other causes" and not to be payable "unless external, violent and accidental means, producing bodily injury, is the proximate, sole and only cause of the death, disability or loss," on the evidence most favorable to the plaintiff it could be found that the insured tripped and fell twice and died on the evening of the same day, that before the fall he was suffering from a seriously diseased condition of the heart or lungs, or both, which was precipitated to a final termination by the fall, that such a fall would not have been fatal except for the diseased condition of vital organs and that the diseased condition and the fall operated together, each contributing to the fatal result.   *Held,* that it could not be found that the death of the insured resulted from the accident "alone and independent of all other causes" as "the proximate, sole and only cause," and that under the terms of the contract the plaintiff could not recover.

Contract, by the widow of Fred Adams Leland, late of Springfield, upon an accident insurance certificate issued by the defendant, a corporation organized under the laws of the State of Ohio, to. the plaintiff's husband, in which the plaintiff was named as beneficiary, to recover for the death of the insured on January 17,

1916, alleged to have resulted from bodily injuries received on that day, "through external, violent and accidental means, which said injuries alone and independent' of all other causes" occasioned his death. Writ dated June 13, 1916.

In the Superior Court the case was tried before *Callahan, J.* The evidence is described in the opinion. At the close of the evidence the judge ruled that the plaintiff was not entitled to recover and ordered a verdict for the defendant. By agreement of the parties the judge reported the case for determination by this court upon the stipulation that, if "the jury would have been warranted in finding a verdict for the plaintiff on the evidence admitted or offered by the plaintiff and improperly excluded, judgment was to be entered for the plaintiff in the sum of $6,575 with interest from April 26, 1917; otherwise, judgment was to be entered upon the verdict."

The verdict was ordered and an order for reservation by report was made on April 26, 1917. On July 27, 1917, the plaintiff made the motion for extending the time "for filing her exceptions," which is mentioned in the opinion. This was allowed as there stated, the judge intending to extend the time for presenting a report. Afterwards at numerous times the plaintiff made successive motions to extend the time for filing her exceptions and presenting a report, which were allowed by the judge. On July 23, 1918, the defendant made a motion that judgment be entered on the verdict "Because the plaintiff has failed duly to present a draft report within the time required by law and by the rules of this court." Another reason alleged was that the plaintiff had failed to file her exceptions.

The judge denied the motion, and in finally reporting the case made the following statement: "In addition to and independent of any rights that the plaintiff may now have to insist upon the case being reported, I am, of my own volition, and in the exercise of my discretion, and because I believe that justice requires it, now reporting this case to the Supreme Judicial Court."

The defendant alleged exceptions.

Rule 55 of the Superior Court (1915) is as follows: "Where a case is reserved for report, the counsel for the plaintiff shall present a draft report within twenty days thereafter, or within such further time as the court may by special order allow."

*A. Dunnett* of Vermont, (*J. P. Carr* with him,) for the plaintiff in the first case.

*J. P. Carr*, (*A. Dunnett* of Vermont with him,) for the plaintiff in the second case.

*D. B. Hoar*, (*E. A. McClintock & R. D. Houlihan* with him,) for the defendant.

RUGG, C. J.  During the trial of this case the presiding judge suggested that he would order a verdict for the defendant and that the case be reported upon a stipulation as to its final disposition in accordance with the ultimate decision as to the questions of law.  At the conclusion of the evidence a verdict was ordered for the defendant and the parties agreed that the case should be reported to this court upon terms stated.  No exceptions were saved on this point.  Thereafter the plaintiff presented a motion for extending the time for "filing her exceptions," which was allowed by the judge, without close examination, on the assumption that it was a motion to extend the time for filing a report.  No correction of the record has been made in order to make it conform to the intention of the court.  See *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 387; *Maggelet's Case,* 228 Mass. 57, 63; *Farris* v. *St. Paul's Baptist Church,* 220 Mass. 356, 359; *Perkins* v. *Perkins,* 225 Mass. 392.  The defendant contends that under Rule 55 of the 1915 Superior Court rules the report is not rightly before us, because the time within which the report might have been filed had expired before it actually was filed, relying in this connection on *Hack* v. *Nason,* 190 Mass. 346.

This contention cannot be supported.  The Superior Court apart from rule has power under R. L. c. 173, § 105, as amended by St. 1917, c. 345, to report cases as therein specified without special limit as to time.  *Strong* v. *Carver Cotton Gin Co.* 202 Mass. 209, 212.  *Lee* v. *Blodget,* 214 Mass. 374.  Rule 55 was not intended to deprive the judge of this power to make a report in the exercise of sound discretion in order to forward the ends of justice.  Its purport is to put upon a plaintiff a definite duty in regard to the preparation of reports and to confine his absolute rights within the rational limits there established, to the end that unreasonable delay may be prevented.  See *Frank, petitioner,* 213 Mass. 194.  The rule was not designed to tie the hands of the judge so that he cannot do what justice requires as between

the parties in cases where grave and doubtful questions of law are involved. Its words do not require such a result. The judge may well, where there has been failure to comply with the rule, decline to exercise his discretion to report a case. But he is not thereby precluded from making a report if in the exercise of wise discretion it ought to be made. The case is before us rightly.

This is an action of contract brought by the beneficiary on an accident insurance certificate issued by the defendant. The contract, amongst other stipulations, provided for indemnification, to the extent there specified, to the insured or beneficiary "against the results of bodily injury . . . effected through external, violent and accidental means, herein termed the accident, which shall be occasioned by the said accident alone and independent of all other causes." Another provision was to the effect that the benefits should not be payable by the defendant "unless external, violent and accidental means, producing bodily injury, is the proximate, sole and only cause of the death, disability or loss."

The insured was a commercial traveler and continued his work regularly until the Saturday before his death. He was apparently in good health, and had been for many years, save a recent cold. On Monday morning he tripped and fell twice, once becoming unconscious, as he was returning to his chamber from the cellar of his home where he had done something about the heater. He was assisted to bed, regained consciousness, complained of pain in his right side, was treated by a physician, had difficulty in breathing, and died that same evening. Slight abrasions observed on the body apparently are conceded to have resulted from the fall and not in themselves to have been a cause of the death. An autopsy was had, which revealed abnormal and unnatural conditions in the form of heart lesions, lung lesions, and lesions of other parts of the circulatory system. It was plainly evident that these conditions had relation to the death and alone were sufficient to cause death, and that some of them had existed for a considerable period, probably more than a year. A part of the heart was normal and the right part "very markedly, clearly and regularly dilated all the way around." This condition was so bad that, if it were in existence before the fall, the deceased

could not have been expected to have lived very long. A diseased condition of the lungs also was disclosed. The physicians whose testimony was most favorable to the plaintiff gave as their opinion that the death resulted from a sudden call for more effort than the heart could make, or from acute heart failure at the time of the fall, and that the shock of the fall precipitated death, because an individual with a heart damaged to the extent of that of the deceased is disposed to acute failure or lack of working power from a shock or over exertion of any kind.

There is testimony of one of the experts which appears, standing by itself alone, to have been somewhat equivocal in respect of the dilated condition of the heart and to be susceptible of the construction that that condition might have resulted, and perhaps in his opinion did result, from the fall and did not antedate the fall. This witness testified that "the cause of death, medically speaking, was myocardial insufficiency and acute dilation. Myocardial insufficiency is such a relation between the condition of the heart muscle and the tasks which it is called upon to do that it is unable to do them." This witness also gave evidence to the effect that "some of the lesions of the heart and lungs without doubt had existed before" the time of the fall and he thought "might have existed for more than a year probably, . . . were probably constantly progressing." He testified in considerable detail to a diseased condition in both lungs of the deceased known as "emphysema," the result of which was "an excessive demand made directly on the right side of the heart," the side excessively dilated, and gave it as his opinion that the deceased was suffering at the time of and for some time previous to the fall from chronic emphysema. Further questions and answers were as follows: "Isn't it true that the most that can be possibly claimed in this case with reference to that fall, or either or both of the two falls alluded to, is that they aggravated and made fatal an already existing chronic disease?" The answer was "Yes." In substance but in slightly varying form this question and answer were repeated. Then in answer to the question, "You don't want the jury or the court to understand your testimony as being any stronger than that?" the witness replied, "No, I don't." If it can be contended that the earlier testimony of the witness was open to different constructions and was more or less conflicting or

inconsistent, these questions and answers were clear and not open to doubt. The replies were definitely adhered to by the witness as constituting the truth, and he and the jury, so far as they gave his testimony credence, were bound by them as his final expression of view. *Sullivan* v. *Boston Elevated Railway,* 224 Mass. 405, and cases collected at page 406.

The other witness most favorable in his evidence to the plaintiff testified that the deceased for a long time before the fall was suffering from serious and progressive diseases of both the heart and the lungs, and that the extreme extent of claim that rightly could be made was that the accident aggravated and made fatal already existing diseases, and that disease and fall acted concurrently to cause death.

The plaintiff's case must rest upon this testimony as its basis. Without reciting the evidence in further detail, it is plain from a careful examination of it all that the utmost which could have been found in favor of the plaintiff was that the deceased was suffering at the time of and before the fall from a seriously diseased condition of the heart or lungs, or both, which was precipitated to a fatal termination by the fall, but which probably would not have terminated thus on that day but for the fall. Such a fall as the deceased suffered would not have been fatal except for the diseased condition of vital organs. These two causes, namely the diseased condition and the fall, operated together, each contributing to the fatal result.

The principle of law, which is controlling under such a contract as that here relied upon, in the light of such facts as are disclosed on this record, was declared in *Freeman* v. *Mercantile Mutual Accident Association,* 156 Mass. 351, in an opinion by Mr. Justice Knowlton. That principle is, "Where different forces and conditions concur in producing a result, it is often difficult to determine which is properly to be considered the cause, and, in dealing with such cases, the maxim, *Causa proxima non remota spectatur,* is applied. But this does not mean that the cause or condition which is nearest in time or space to the result is necessarily to be deemed the proximate cause. It means that the law will not go farther back in the line of causation than to find the active, efficient, procuring cause, of which the event under consideration is a natural and probable consequence, in view of the existing

circumstances and conditions. The law does not consider the cause of causes beyond seeking the efficient predominant cause, which, following it no farther than those consequences that might have been anticipated as not unlikely to result from it, has produced the effect. An injury which might naturally produce death in a person of a certain temperament or state of health is the cause of his death, if he dies by reason of it, even if he would not have died if his temperament or previous health had been different; and this is so, as well when death comes through the medium of a disease directly induced by the injury, as when the injury immediately interrupts the vital processes." That statement of the law has been widely quoted and that decision cited with approval by courts of other jurisdictions and is generally accepted as sound. *Stanton* v. *Travelers Ins. Co.* 83 Conn. 708, 711. *White* v. *Standard Life & Accident Ins. Co.* 95 Minn. 77, 80. *Fetter* v. *Fidelity & Casualty Co.* 174 Mo. 256, 267, 268. *Modern Woodman Accident Association* v. *Shryock,* 54 Neb. 250, 259. *Penn* v. *Standard Life & Accident Ins. Co.* 158 N. C. 29, 34. *National Masonic Accident Association of Des Moines* v. *Shryock,* 20 C. C. A. 3, 5. *Continental Casualty Co.* v. *Lloyd,* 165 Ind. 52, 62. *Fidelity & Casualty Co.* v. *Meyer,* 106 Ark. 91, 98. To the same effect see *Thornton* v. *Travelers Ins. Co.* 116 Ga. 121; *Maryland Casualty Co.* v. *Morrow,* 130 C. C. A. 179; *S. C.* 213 Fed. Rep. 599; *Vernon* v. *Iowa State Traveling Men's Association,* 158 Iowa, 597, 605, 606; *Aetna Life Ins. Co.* v. *Bethel,* 140 Ky. 609. See in this connection, *Moon* v. *Order of United Commercial Travelers of America,* 96 Neb. 65.

The application of that principle of law to the case at bar is that, if the insured was suffering from a disease, which was accelerated and aggravated by the accident so as to be a cause co-operating with it to produce the fatal end, then there can be no recovery. Manifestly recovery is not barred merely because the insured is suffering from disease. One upon a bed of illness may meet death by an explosion or other accidental means. *Bohaker* v. *Travelers Ins. Co.* 215 Mass. 32. If there is no active disease, but merely a frail general condition, so that powers of resistance are easily overcome, or merely a tendency to disease which is started up and made operative, whereby death results, then there may be recovery even though the accident would not have caused

that effect upon a healthy person in a normal state. *Cheswell* v. *Fraternal Accident Association of America,* 199 Mass. 267. *Collins* v. *Casualty Co. of America,* 224 Mass. 327.

The inevitable result is that under this statement of the law the plaintiff cannot recover upon these facts. The deceased confessedly was suffering from disease or diseases which actively co-operated with the fall in causing death. The disease and the fall were concurring, efficient and proximate causes in producing the death. Either alone without the other would not then have resulted fatally. It cannot be held with any due regard to the meaning of words in the contract here sued upon, that the death of the insured resulted from the accident "alone and independent of all other causes" as "the proximate, sole and only cause." See in this connection, *Leahy* v. *Standard Oil Co. of New York,* 224 Mass. 352, 360–363.

The burden of proof is upon the plaintiff to show that the death resulted from one or more of the causes enumerated by the terms of the contract as establishing the liability of the defendant. *Smith* v. *Travelers Ins. Co.* 219 Mass. 147, 150. As matter of law she has failed to sustain that burden for the reasons stated. It becomes unnecessary to consider the other questions raised.

*Exceptions overruled.*

*Judgment on the verdict.*